# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-3109
_____

United States of America

*Plaintiff - Appellee*

v.

Benjamin John Higgerson

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Eastern

_____

Submitted: June 9, 2025
Filed: February 5, 2026

_____

Before LOKEN, ERICKSON, and KOBES, Circuit Judges.

_____

LOKEN, Circuit Judge.

Benjamin Higgerson appeals the sentence imposed by the district court[1] after it revoked his supervised release for the third time. The issue presented is whether the sentence is substantively unreasonable because the district court "weighed heavily

_____

[1]The Honorable Stephanie M. Rose, Chief Judge, United States District Court for the Southern District of Iowa.

an improper factor in arriving at its sentence." A sentence following revocation of supervised release is substantively unreasonable if the district court "fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but commits a clear error of judgment in weighing those factors." United States v. DeMarrias, 895 F.3d 570, 573-74 (8th Cir. 2018) (quotation omitted).

Higgerson argues the district court's comments at the revocation hearing show that its sentence was imposed "to promote respect for the law," a sentencing factor enumerated in 18 U.S.C. § 3553(a)(2)(A) that is excluded from consideration in determining the length of a supervised release revocation sentence in 18 U.S.C. § 3583(e). While this appeal was pending, the Supreme Court issued a controlling decision governing this issue, Esteras v. United States, 145 S. Ct. 2031 (2025). Applying the Court's mandate and guidance from Esteras, as we did in United States v. Jokhoo, 141 F.4th 967, 970 (8th Cir. 2025), we affirm.

## I. Background

In April 2017, Higgerson was sentenced to 78 months imprisonment followed by ten years supervised release after he pleaded guilty to possession of child pornography. He began serving supervised release in December 2021. When he refused to work after the probation officer denied his request to work at a restaurant that employed minors, failed to make required restitution payments, and skipped a sex offender treatment session, the district court revoked supervised release in August 2022 and sentenced Higgerson to nine months imprisonment and nine years of supervised release. He began serving the second term of supervised release in May 2023. When he did not find employment or complete required community service hours, stopped making restitution payments, and missed multiple treatment sessions, the district court revoked supervised release in November 2023 and imposed a revocation sentence of nine months imprisonment and nine years supervised release.

Higgerson began his third term in August 2024.  His mother did not permit him to live with her, as she had during prior periods of supervised release.  The probation officer instructed Higgerson to report to a local homeless shelter.  He did not check in at the shelter and did not report to the Probation Office, two Grade C violations of the terms of his supervised release.  See USSG § 7B1.1.  The district court issued a warrant for his arrest and this third revocation proceeding commenced.

Higgerson was in Criminal History Category I at the time of his original sentencing, so his range of imprisonment for these supervised release violations under the applicable guidelines policy statement was 3 to 9 months.  See USSG §§ 4A1.1, 7B1.4(a).  At the revocation hearing on October 16, 2024, the government requested a sentence above the recommended range due to Higgerson's repeated failure to comply with the terms of supervised release:

> [H]e has a negative attitude with supervision, and he's simply refusing to comply with even the simplest of supervision rules like reporting to the probation office. . . . [T]his court has revoked him twice before, given him nine months.  That has not given him the wake-up call that he needs as he comes out . . . . [T]he day he is released, he determines he is not complying with supervised release and does not show up for his first visit to reinitiate supervised release. . . . So . . . we are asking that his supervision be revoked to [above] the guideline range because the top of the guidelines is nine months, and, obviously, that is not adequate for this defendant.  We would also ask that the defendant be placed in the RRC to follow. . . . Maybe this will stabilize him . . . help him get a job so that he can then pay the restitution that is still owed.

In response, counsel for Higgerson requested a sentence on the low end of the range due to his lack of housing during this term of supervised release:

> As your honor noted, this was the first time he didn't have a place to land when he came out with his mother, and so for that reason, I think

it is different circumstances than before, and so going above the guideline range would be inappropriate . . . . In fact, I think on the lower end of the guideline range would be appropriate for Mr. Higgerson. The imprisonment is all that is necessary as a punishment. We respectfully disagree and don't believe the RRC or any other facility is necessary when he comes out. . . . [A]dding more rules is not going to fix the problem.

Higgerson declined the district court's offer of an opportunity to speak. The court then explained its revocation ruling in detail. We quote the most relevant comments:

I have considered all of the factors under 3553(a). I have considered all the advisory guidelines and the applicable commentaries, including 3F1.3 . . . .

As noted in prior hearings, working is a significant part of rehabilitation. . . . Defendants who have child pornography issues, as this defendant does, get into more trouble when they have unoccupied time . . . and working a job or community service type of arrangement limits those temptations . . . .

[A]s I've said at prior hearings, Defendant will control how much community service he does. . . . It could be 40 hours every week until we finish supervision, which right now is nine more years if he continues to refuse to work. . . .

So that's talking about supervision once we get past the revocation itself. At this point, I have twice revoked the defendant. I have given him nine months of imprisonment each time. He has immediately reoffended rather vigorously both times. He has refused to comply with even the most simple of instructions. He won't go to sex offender treatment, he won't get a job, he won't pay his restitution.

He is a 43-year-old man who is in good health. He has no substance abuse history. He has no particularly serious mental health issues. . . . He has a college degree. He is somebody who is capable of

complying [and] working [and] supporting himself, and he has opted not to do those things for pretty much the entirety of his life.

I don't know what to do with him other than continue to incrementally increase the punishments that he's facing for noncompliance and continue to set rules that hopefully encourage him towards doing what he needs to do, which is getting a job, living independently, and complying with his treatment obligations.

So having considered all of those matters, I again revoke Defendant's supervised release. I impose 18 months of imprisonment to be followed by 9 years of supervised release.

As far as the terms and conditions of supervision go, Defendant will spend the first 180 days of his term of supervised release at the residential reentry center or until the probation office determines that he can be released from that program. He'll have work privileges, provided he is working.

After explaining the continuing other conditions of supervised release, the district court advised Higgerson of his right to appeal the sentence, and counsel stated that Higgerson "has no requests or recommendations regarding the BOP." The court then asked: "Anything else . . . Mr. Breedlove?" Defense counsel replied, "No, Your Honor."

On appeal, Higgerson argues his sentence is substantively unreasonable because the district court "gave considerable weight to an improper sentencing factor," 18 U.S.C. § 3553(a)(2)(A). Appellant's Brief explains that the court's comment that Higgerson's revocation punishment "is going to be continuingly incrementally increased until [he] complies [with the conditions of his supervised release] appears to be more akin to a desire of the district court to promote respect for the law," a factor "that is omitted from being considered in a sentencing revocation hearing by 18 USC § 3583(e)."

The appeal was submitted without oral argument on June 9, 2025. On January 14, 2026, the government filed a Motion To Dismiss Appeal, advising for the first time that Higgerson commenced a fourth term of supervised release following his release by the Bureau of Prisons from the term of revocation imprisonment on appeal, and that his challenge to the third custodial sentence is therefore moot. The district court docket entries reveal that a Summons for Offender Under Supervision was issued by the court on December 23, 2025 and returned executed on January 6, 2026. Counsel representing Higgerson on this appeal was again appointed on January 9, a final revocation hearing was scheduled, and a motion for a fourth revocation of supervised release was filed on January 12. The government's Motion To Dismiss Appeal states that the "[n]ew violation proceedings are pending." Thus, the issue raised on appeal may well affect any revocation sentence imposed in the pending fourth revocation proceedings. We therefore deny the Motion To Dismiss Appeal.

## II. Discussion

**A.** In initially sentencing a defendant, 18 U.S.C. § 3553(a) enumerates several factors the district court "shall consider." One is the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," 18 U.S.C. § 3553(a)(2)(A). When imposing a revocation sentence, § 3583(c) and (e) instruct the district court to consider the same § 3553(a) factors with two exceptions -- it omits § 3553(a)(2)(A) and § 3553(a)(3) (the "kinds of sentences available") from the § 3553(a) sentencing factors the court "shall consider."

Due to textual ambiguity in § 3583(e), which governs revocation sentencing, a circuit split arose. Some circuits permitted but did not require district courts to consider § 3553(a)(2)(A) when revoking supervised release. Esteras, 145 S. Ct. at 2038 n.1. Others prohibited district courts from considering it altogether. Id. And

-6-

others merely prohibited district courts from giving § 3553(a)(2)(A) "dominant" weight. Id. (quotation omitted).

In United States v. Martin, we noted this circuit split but held the district court did not commit *procedural* error when it recited all the § 3553(a) factors, including § 3553(a)(2)(A), but "focused primarily on [defendant's] history and characteristics rather than the retribution for the offenses." 757 F.3d 776, 780 & n.2 (8th Cir. 2014). In United States v. Hall, where the district court varied upward "in part based on the need to promote respect for the law," we noted that "the split may be ending" and concluded the district court did not abuse its discretion:

> The district court extensively discussed the nature and circumstances of the offense as compared to the defendant's criminal history, both of which are permissible factors for revocation sentences. Then, it mentioned the need . . . to promote respect for the law as [an] additional reason[] supporting its sentence. Consequently, this is an instance of using an excluded factor only as an insignificant justification. We see no *substantive* error in giving insignificant weight to the excluded factor.

931 F.3d 694, 697 (8th Cir. 2019) (emphasis added), relying on United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc).

The Supreme Court granted certiorari in Esteras to resolve this circuit conflict. In Esteras, the appellant was arrested on domestic violence charges while serving a term of supervised release. 145 S. Ct. at 2037. At his revocation hearing, the district court imposed a sentence twice as high as the upper range of the applicable guidelines, acknowledging that "part of its decision certainly [was] the need for the sentence imposed, to promote respect for the law." Id. (quotation omitted). The Supreme Court reversed this revocation sentence, holding that Congress's omission of § 3553(a)(2)(A) from the list of factors in § 3583(e) was intentional, and therefore

the district court could not consider "respect for the law" when determining Esteras's revocation sentence.  Id. at 2040.

The Court began its majority opinion in Esteras by noting that § 3553(a)(2) "captures [in subsections (A) to (D)] the traditional heartland of criminal sentencing. . . . These four considerations -- retribution, deterrence, incapacitation, and rehabilitation -- are the four purposes of sentencing generally." Id. at 2038 (quotation omitted).  When determining whether to revoke a defendant's supervised release, § 3583(e) includes in the list of factors to consider subsections (B), (C), and (D).  But it omits from consideration § 3553(a)(2)(A) -- the need for the sentence to reflect the seriousness of the *offense* and to provide just punishment for the *offense*.  "In the context of a revocation hearing," the Court explained, "the 'offense' is the underlying crime of conviction, not the violation of the supervised-release conditions."  Id. at 2040.[2]  In "our current criminal justice system," supervised release "'is not a punishment in lieu of incarceration' . . . . So when a defendant violates the conditions of his supervised release, it makes sense that a court must consider the *forward-looking* ends of sentencing (deterrence, incapacitation, and rehabilitation), but may not consider the *backward-looking* purpose of retribution." Id. at 2041 (emphasis in original, quotations omitted).  The Court concluded:

> Text, structure, and precedent all point in the same direction: Congress's decision to exclude § 3553(a)(2)(A) from § 3583(e)'s list of sentencing factors means that district courts cannot consider § 3553(a)(2)(A) when deciding whether to revoke supervised release.

---

[2]This is consistent with our prior decisions.  "It is well-settled in this circuit that a court imposing a revocation sentence is not cabined by the supervised release term originally imposed, but only by the term statutorily authorized for the offense of conviction[.]" United States v. Dailey, 113 F.4th 850, 857 (8th Cir. 2024).

Id. at 2042.  Relevant to the appeal in this case, the Court went on to briefly comment on the government's concern that it will be difficult for appellate courts to determine whether a district court has impermissibly relied on § 3553(a)(2)(A):

> Much will turn on whether the defendant objects.  If the defendant does not make the district court aware that it may be impermissibly relying on § 3553(a)(2)(A), then the defendant's appeal will be governed by plain-error review.  See Fed. Rule Crim. Proc. 52(b).  In that event, the district court's order . . . will be affirmed unless it is "clear" or "obvious" that the district court actually relied on § 3553(a)(2)(A) -- because it did so expressly or by unmistakable implication.

Id. at 2045, citing United States v. Olano, 507 U.S. 725, 734 (1993).  In Jokhoo, applying this guidance, we affirmed the district court's decision to impose a revocation sentence of 12 months imprisonment.  We concluded that the defendant:

> failed to carry his burden to show that the court's mistake [a "passing reference" to retribution] affected his substantial rights. . . .  [T]he "primary driver" of his sentence was the district court's belief that he had a "problem following the rules."  This was a separate basis for the sentence and an appropriate one; the district court was free to weigh the number of Jokhoo's supervised release violations against him for purposes other than exacting retribution.

141 F.4th at 970 (citation omitted).  In other words, we interpreted the plain error standard for review of this issue under Esteras as virtually indistinguishable from our review of an "insignificant" additional justification in our pre-Esteras decision in Hall.  Cf. United States v. Johnson, 827 F.3d 740, 745 (8th Cir. 2016).

**B.** In this case, although the briefs for both parties improperly ignore the issue, see Fed. R. App. P. 28(a)(8)(B), it is obvious that Higgerson's contention that his sentence is substantively unreasonable because the district court "gave considerable

weight" to an improper sentencing factor, 18 U.S.C. § 3553(a)(2)(A), is subject to plain error review. Defense counsel did not raise the issue in the district court and expressly answered "No, Your Honor," when the court asked if he had "anything further" after the court's lengthy explanation of its sentencing decision. In <u>United States v. Dailey</u>, we applied plain error review when the court declined to follow the parties' joint recommendation and imposed a greater imprisonment sentence: "Neither party responded when the court asked for 'anything additional.' No objections were raised." 113 F.4th 850, 854 (8th Cir. 2024). Indeed, defense counsel here went even further, stating that "[the imprisonment the court was imposing] *is all that is necessary as a punishment*." This gave the court no reason to comment on whether it was actually relying on the retributive purpose of 18 U.S.C. § 3553(a)(2)(A).[3]

Here, there is no record support for a contention that the district court committed plain error under <u>Esteras</u> and <u>Hall</u>. At the sentencing hearing, the court did not mention 18 U.S.C. § 3553(a)(2)(A) or use the term "promote respect for the law." Thus, defense counsel's assertion on appeal that the court's comments "appear to be more akin to a desire of the district court to promote respect for the law" is worse than unfounded speculation or inference; it is outright fabrication. The district court did state at the outset of its explanation that it considered "all of the factors under § 3553(a)." That is required at an original sentencing. In <u>Martin</u>, which was governing Eighth Circuit precedent when the court imposed this revocation sentence

_____

[3]In <u>United States v. Deatherage</u>, where we held that a general objection at sentencing did not preserve the issue whether the court adequately explained its specific reasons, the panel majority observed that plain error review "invites defense counsel not to object, since an objection gives the district court an opportunity to correct any deficiency." Therefore, "if counsel does not timely object that the reasons . . . have not been adequately explained, defendant has voluntarily relinquished the issue, and we should deem it waived, not merely forfeited." 682 F.3d 755, 763 & n.4 (8th Cir. 2012).

prior to the Supreme Court's decision in <u>Esteras</u>, we held that this comment did not establish procedural error because the district court, as in this case, "focused primarily on [defendant's] history and characteristics rather than the retribution for the offenses." 757 F.3d 776, 780 & n.2. This is not evidence of plain substantive error under <u>Esteras</u> and <u>Hall</u>, which require Higgerson to establish it is "'clear' or 'obvious' that the district court actually relied on § 3553(a)(2)(A) -- because it did so expressly or by unmistakable implication." <u>Esteras</u>, 145 S. Ct. at 2045.

Rather, the district court's comments at the revocation hearing strongly imply that its focus was primarily on the *forward-looking* ends of sentencing in §§ 3553(a)(2)(A)-(C) -- deterrence, incapacitation, and rehabilitation -- that a court must consider in imposing a revocation sentence. 18 U.S.C. § 3583(e)(3); <u>Esteras</u>, 145 S. Ct. at 2041. In stressing the significance of Higgerson's repeated refusal to work, the court stated that "working is a significant part of rehabilitation." The court noted that Higgerson's repeated, unjustified noncompliance with the basic requirements of supervised release and refusal to comply with community service obligations showed that the court's two prior nine-month revocation sentences had not deterred him from violating his supervised release obligations nor protected the public from those continuing violations. If the court considered the need to promote respect for the law at all, "this is an instance of using an excluded factor only as an insignificant justification. We see no *substantive* error in giving insignificant weight to the excluded factor." <u>Hall</u>, 931 F.3d at 697.

Higgerson's sentence was not otherwise substantively unreasonable. "We have repeatedly upheld revocation sentences that varied upward from the advisory guidelines range because the defendant was a recidivist violator of supervised release conditions." <u>United States v. Harris</u>, 55 F.4th 1162, 1164 (8th Cir. 2022) (quotation omitted, cleaned up). In <u>United States v. Clark</u>, for example, we upheld a 24-month sentence for a defendant who failed to report to the Probation Office upon release and violated the rules of his Residential Reentry Center Program, notwithstanding that he

had previously been sentenced to only 6 months imprisonment after violating seven conditions during his first term of supervised release. 998 F.3d 363, 366-67, 369-70 (8th Cir. 2021). Here, the court noted that, despite twice revoking Higgerson's supervised release and imposing sentences at the high end of the recommended range, Higgerson "immediately reoffended both times. He has refused to comply with even the most simple of instructions. He won't go to sex offender treatment, he won't get a job, he won't pay his restitution." In DeMarrias, we upheld a 24 month revocation sentence for a defendant who had been previously sentenced to 12 months imprisonment because the district court reasonably concluded "the defendant must learn to follow the rules." 895 F.3d at 573-74. The district court's revocation sentencing decision was reasonably grounded in the history and characteristics of the defendant and the need to deter future violations. Accordingly, the court did not abuse its substantial revocation sentencing discretion in imposing a sentence of 18 months imprisonment.

The judgment of the district court is affirmed.

_____