**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>v.<br><br>**KEVIN DONOHOE,**<br><br>**Defendant.** | **No. 18-cr-292-PLF** |

## REPORT AND RECOMMENDATION

On June 21, 2024, the Probation Office filed a petition requesting that Judge Friedman hold a hearing on violation. *See* ECF No. 53. The petition alleged a series of technical violations and that Mr. Donohoe had tested positive on two occasions for use of a controlled substance. *See* ECF No. 58. On June 24, 2024, Judge Friedman issued an arrest warrant. *See* ECF No. 54. On August 7, 2024, Mr. Donohoe appeared before the Court on a return of arrest warrant and detention hearing. The Court detained Mr. Donohoe as the parties explored a bed-to-bed transfer to an inpatient drug treatment facility.

On August 12, 2024, the parties appeared and jointly requested a bed-to-bed transfer. On August 13, 2024, the Court ordered Mr. Donohoe's transfer to an approved facility.

On August 22, 2024, the Probation Office filed a supplemental petition notifying the court of a prior arrest. Specifically, that local law enforcement in Delaware arrested Mr. Donohoe on July 30, 2024, for possession of a controlled substance. *See* ECF No. 58.

On August 27, 2024, Judge Friedman referred the outstanding petitions to the undersigned for the preparation of a report and recommendation.

The undersigned held three subsequent reentry progress hearings. Initially, Defendant was successfully participating in the drug treatment program. However, it later became clear that Mr. Donohoe was not a good fit for the program. Ultimately, Mr. Donohoe left the program without court permission and then failed to appear for a status hearing on October 16, 2024. On October 16, 2024, the undersigned issued a warrant for his arrest.

On January 9, 2026, the Court quashed the arrest warrant based on representations from defense counsel—who was in contact with the Probation Office—that Mr. Donohoe planned to self-surrender. Later that day, Mr. Donohoe self-surrendered and appeared before the Court.

At the hearing, Mr. Donohoe admitted the outstanding violations and apologized for leaving the treatment facility. Mr. Donohoe further stated that he was looking for stable housing. He has reconnected with his mother who has offered him a place to stay. Mr. Donohoe also reported that he has been researching employment opportunities where he could use his architecture degree. Mr. Donohoe explained that he has struggled to find work because his supervision appears on background checks and has prevented him for being hired for various jobs. That is consistent with what this Court and experts have observed. *See* Devah Pager, Bruce Western and Naomi Sugie, *Sequencing Disadvantage: Barriers to Employment Facing Young Black and White Men with Criminal Records*, 623 ANNALS AM. ACAD. POL. & SOC. SCI. 195 (2009), at https://perma.cc/2XFQ-23EB (finding significant negative effects of criminal records on hiring outcomes).

At bottom, "the primary purpose of supervised release is to facilitate the integration of offenders back into the community rather than punish them." U.S. Sent'g Comm'n, *Federal Offenders Sentenced to Supervised Release* (2010) ("Supervised Release Report") 9. Indeed, "[s]upervised release fulfills rehabilitative ends, distinct from those served by incarceration."

*United States v. Johnson*, 529 U.S. 53, 59 (2000). Thus, when a "defendant violates a condition of supervised release, courts must consider the *forward-looking* sentencing ends, but may not consider the *backward-looking* purpose of retribution." *Esteras v. United States*, 606 U.S. 185, 186 (2025) (holding that a district court may not revoke supervised release based on a belief that the defendant's original sentence was lenient).

Mr. Donohoe's supervision has reached the end of its useful lifespan. There are no further resources the Probation Office can offer Mr. Donohoe that he could not seek on his own. Court-mandated treatment was ineffective in the past. The Probation Office believes further court-mandated treatment will yield similar results, which will result in similar violations. So, ordering Mr. Donohoe back to treatment would be setting him up to fail. Doing that would doom him to "be[ing] trapped in the world of supervised release." *United States v. Reddick*, 778 F. Supp. 3d 121, 133 (D.D.C. 2025).

Mr. Donohoe does not appear to pose a risk to the community. He has not been arrested since July 2024. And even then, there were no allegations of violence or drug distribution. "There is no indication of how additional punishment furthers deterrence." *United States v. Nwenze*, No. 19-cr-285, 2024 WL 4608867, at *4 (D.D.C. 2024). In fact, further incarceration endangers Mr. Donohoe and the public. *See United States v. Bryant*, 778 F. Supp. 3d 14, 22 n.7 (D.D.C. 2025) (discussing how "[e]xposure to the specific and general harms that pretrial detainees experience can result in long-lasting trauma."); Katie Rose Quandt and Alexi Jones, *Research Roundup: Incarceration can cause lasting damage to mental health*, PRISON POLICY INITIATIVE (May 13, 2021), at https://perma.cc/N6C2-8UWF (examining how experiencing or witnessing violence during incarceration was significantly related to "aggressive and antisocial behavioral tendencies as well as emotional distress."). And further incarceration would derail whatever progress he has

made over the prior years. *See United States v. Mosley*, 312 F. Supp. 3d 1289, 1294 (M.D. Ala. 2018).

Given that Mr. Donohoe's supervised release was set to expire in May 2025, that he has committed no further offenses since July 2024, that he does not appear to pose a danger to the community, that he self-surrendered and then took responsibility for his actions, and based on the joint recommendation of the parties and the Probation Office: the undersigned recommends a finding that Mr. Donohoe violated his conditions of release, sentence him to a period of time served, and not impose any further period of supervision.[1]

Date: February 13, 2026

_____
ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE

---

[1] Per the Probation Office, no hearing is needed to adopt this Recommendation, as no additional supervision is ordered. Adoption of the Report and Recommendation would close this case.