NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0238n.06

No. 25-4006

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
May 28, 2026
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff-Appellee, ) | ON APPEAL FROM THE |
| ) | UNITED STATES DISTRICT |
| v. ) | COURT FOR THE NORTHERN |
| ) | DISTRICT OF OHIO |
| STEVEN D. FLOWERS, ) | |
| ) | |
| Defendant-Appellant. ) | OPINION |
| ) | |
| ) | |

Before: MOORE, CLAY, and NALBANDIAN, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Steven Flowers moved for early termination of his eight-year term of supervised release. The district court denied Flowers's motion, reasoning that his success on supervised release did not outweigh the serious nature of his offense, his criminal history, and his somewhat recent violation of the terms of his supervised release. For the reasons that follow, we **AFFIRM** the district court's order.

## I. BACKGROUND

In 2004, Flowers was charged with possession with intent to distribute over 50 grams of crack cocaine. R. 9 (Indictment) (Page ID #20). Flowers pleaded guilty, and his Guidelines range was 262–327 months' imprisonment, which was calculated using the U.S. Sentencing Guidelines Manual § 4B1.1's career-offender enhancement. R. 30 (Plea Agreement) (Page ID #77–84); PSR ¶¶ 23, 69. The district court sentenced Flowers to 262 months' imprisonment and ten years of supervised release. R. 35 (Judgment at 2–3) (Page ID #100–01). The plea agreement included an

enhancement for being a career offender under 21 U.S.C. §§ 841(b)(1)(A) and 851, because Flowers had been convicted of at least two prior offenses that, at the time, qualified as "felony drug offenses or offenses of violence." R. 30 (Plea Agreement at 2, 4) (Page ID #78, 80). Flowers had an extensive criminal history, including convictions for forgery, driving under the influence, aggravated assault, attempted possession of drugs, unlawful gun possession, three convictions for drug trafficking, and four convictions for possession of drugs. PSR ¶¶ 29–43.

In 2019, Flowers moved to reduce his sentence under the First Step Act. Specifically, he argued that he was no longer a career offender due to changes in Ohio law that meant his drug-trafficking offense that served as a career-offender predicate no longer qualified as a felony drug offense under the Guidelines. R. 39 (Mot. to Reduce Sentence at 8–9) (Page ID #117–18).[1] The district court concluded that reducing Flowers's sentence was not warranted because it "would have imposed" the same sentence regardless of the subsequent changes in the law. R. 45 (7/12/2019 Order at 3) (Page ID #183). The court also concluded that Flowers's Guidelines range remained the same because the change in Ohio law was not retroactive. *Id.* at 4 (Page ID #184). The district court did, however, reduce Flowers's term of supervised release from ten years to eight years. *Id.* at 2, 5 (Page ID #182, 185).

In 2020, Flowers filed a motion for compassionate release due to the heightened risk he faced from COVID-19 and because his Guidelines range, if calculated at the time the motion was filed, would be 77–96 months—much lower than the (then mandatory) range of 262–327 months when he was sentenced. R. 66 (Mot. for Compassionate Release at 4, 7) (Page ID #233, 236). The

---

[1]Flowers did not argue that the second offense on which his career offender status was based, aggravated assault under Ohio law, was no longer considered a crime of violence by the Sixth Circuit. *United States v. Burris*, 912 F.3d 386, 400–07 (6th Cir. 2019) (en banc); PSR ¶¶ 23, 32.

district court initially denied the motion, even though Flowers had not yet filed his reply brief. R. 74 (9/23/2020 Order at 3) (Page ID #348). Flowers moved for reconsideration, and the district court granted the motion, so Flowers was released from prison on October 13, 2020, slightly less than two years before his scheduled release date. R. 77 (10/7/2020 Order at 2) (Page ID #358);[2] R. 94 (Supervision Rep. at 1) (Page ID #399); R. 66 (Mot. for Compassionate Release at 2) (Page ID #231).

On April 26, 2023, Flowers moved for early termination of his supervised release. R. 79 (4/26/2023 Mot. for Early Term.) (Page ID #361). The district court denied the motion without explanation. R. 81 (5/8/2023 Order) (Page ID #367). On May 1, 2024, Flowers tested positive for marijuana. R. 94 (Supervision Rep. at 2) (Page ID #400). Prior to May 2024, Ohio legalized recreational marijuana, and Flowers mistakenly believed that he could use marijuana because it was legal in the state and he had a medical-marijuana card due to his arthritis and PTSD. Flowers subsequently filed a motion requesting permission to use marijuana while on supervised release, which the district court denied. R. 84 (Mot. for Permission) (Page ID #375). Since Flowers's one positive drug test in May 2024, he has remained drug-free. This was the only time that Flowers violated the terms of his supervised release. On February 12, 2025, Flowers again moved for early termination. R. 89 (2/12/2025 Mot. for Early Term.) (Page ID #383). The district court denied the motion, noting only that Flowers had tested positive for marijuana on May 1, 2024. R. 92 (3/5/2025 Order) (Page ID #394).

---

[2]The order erroneously stated that Flowers's supervised release was to "remain at ten years." *Id.* The district court later corrected this to eight years upon Flowers's motion. R. 86 (Mot. for Clarification at 1) (Page ID #378); R. 88 (10/17/2024 Order) (Page ID #381).

Flowers again moved for early termination of his supervised release on June 30, 2025, which is the motion currently before this court. R. 93 (6/30/2025 Mot. for Early Term.) (Page ID #395). Flowers argued that, as the probation officer had previously recognized, he "ha[d] demonstrated prosocial behaviors, such as maintaining employment and securing stable housing," that his offense conduct occurred more than twenty years prior, that he had done everything he could "to demonstrate [that] he is a changed person," and that he had "successfully served more than four years and eight months on supervision." *Id.* at 2 (Page ID #396). Flowers informed the district court that he lived with his wife and grandson "in the same residence to which he was released more than four and a half years ago," and that he had "maintained stable, full-time employment" working for PepsiCo since September 2021, averaging 52–57 hours of work a week. *Id.* at 3 (Page ID #397). Flowers acknowledged his positive drug test for marijuana but highlighted that it was an isolated incident and that he had otherwise "flourished on supervision," so that "[h]e no longer need[ed] supervision to help him successfully reintegrate[] into society." *Id.*

Probation noted that "[s]ince the commencement of supervision, Mr. Flowers has submitted only one positive drug screen" for marijuana and had "not submitted any additional positive drug tests" since that time. R. 94 (Supervision Rep. at 2) (Page ID #400). The report stated that Flowers had "maintained stable housing and employment since the commencement of supervision," and had "a supportive family." *Id.* at 3 (Page ID #401). Probation also recognized that Flowers's one positive drug screen was his only violation on supervised release and that the "incident appears to be isolated." *Id.* Despite this, probation recommended that the court deny Flowers's motion for early termination because of "the amounts and types of drugs involved in" Flowers's offense of

conviction, his "extensive criminal history," and his categorization as a career offender. *Id.* at 2–3 (Page ID #400–01).

The district court denied the motion without reasoning, and Flowers appealed. R. 96 (Notice of Appeal) (Page ID #407). The Government conceded error under *United States v. Tavarez*, 141 F.4th 750 (6th Cir. 2025), and we vacated the district court's order and remanded for further proceedings. *United States v. Flowers*, No. 25-3523, 2025 WL 3525260, at *1 (6th Cir. Dec. 4, 2025).

On remand, the district court again denied Flowers's motion for early termination. R. 98 (12/8/2025 Order at 2) (Page ID #418). The court stated that "after full consideration of the factors set forth in 18 U.S.C. § 3553(a) early termination is not appropriate at this time." *Id.* at 1 (Page ID #417).[3] The district court reasoned that "Flowers['s] demonstrat[ion of] prosocial behaviors such as maintaining employment, stable housing, and 12 months of clean drug screens" did "not fall outside the scope of generally expected behaviors while on supervised release" and did "not outweigh the § 3553 considerations, specifically those relating to the nature and circumstance of the crime and history of the defendant." *Id.* The district court discussed how Flowers's crime involved "the distribution of crack cocaine, a serious offense with a high impact on the community," and that he "was a criminal history category VI and qualified as a career offender indicating that he has an extensive history of recidivism." *Id.* at 1–2 (Page ID #417–18). The court continued, "[d]espite this history, [Flowers] received a reduction in his sentence through Compassionate Release on the condition that he be subject to an eight year period of supervised

---

[3]As discussed below, district courts may consider only the 18 U.S.C. § 3553(a) factors enumerated in 18 U.S.C. § 3583(e), which excludes § 3553(a)(2)(A). Flowers does not contend that the district court improperly considered § 3553(a)(2)(A).

release. Further, he violated his terms of supervision in May 2024 by failing to remain drug free." *Id.* at 2 (Page ID #418). Flowers timely appealed. R. 99 (Notice of Appeal) (Page ID #419).

## II. ANALYSIS

Upon consideration of the relevant 18 U.S.C. § 3553(a) factors, a district court may "terminate a term of supervised release and discharge the defendant released . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). The relevant § 3553(a) factors include (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," (2) the need for deterrence, (3) the need to protect the public, (4) the need to rehabilitate the defendant, (5) the kinds of sentences available and the sentencing range for the applicable offense, (6) relevant policy statements, (7) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," and (8) "the need to provide restitution to any victims." *Id.* § 3553(a); *id.* § 3583(e) (citing *id.* § 3553(a)(1), (a)(2)(B)–(D) & (a)(4)–(7)). The relevant factors do not include the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." *Id.* § 3553(a)(2)(A); *id.* § 3583(e) (omitting consideration of § 3553(a)(2)(A)). "As the Supreme Court explained in *Esteras v. United States*, exclusion of this factor means that district courts cannot consider 'the need to exact retribution for the defendant's underlying crime.'" *United States v. Collins*, 171 F.4th 830, 835 (6th Cir. 2026) (quoting *Esteras v. United States*, 606 U.S. 185, 194–95 (2025)).

We review for abuse of discretion a district court's denial of a motion for early termination of supervised release. *Tavarez*, 141 F.4th at 756. "[A] district court abuses its discretion when it

relies on clearly erroneous findings of fact, . . . improperly applies the law or uses an erroneous legal standard." *Id.* at 757 (quoting *United States v. Carter*, 463 F.3d 526, 528 (6th Cir. 2006)). A district court likewise abuses its discretion if it does not consider the parties' arguments and the relevant § 3553(a) factors, and if the decision does not have a reasoned basis. *Id.* at 757–58.

Flowers first contends that the district court erred by requiring exceptionally good behavior to grant early termination of supervised release. Appellant Br. at 12–13. True, a district court may not require exceptionally good conduct as a prerequisite to granting early termination. *United States v. Hale*, 127 F.4th 638, 640–42 (6th Cir. 2025). That said, under our caselaw, district courts may consider whether the "defendant exhibited 'exceptionally good behavior' when exercising" their discretion to grant or deny a motion for early termination. *Id.* at 641. Here, the district court did just that—it noted that even though "Flowers has demonstrated prosocial behaviors such as maintaining employment, stable housing, and 12 months of clean drug screens," those behaviors did "not fall outside the scope of generally expected behaviors while on supervised release" and did "not outweigh the § 3553 considerations, specifically those relating to the nature and circumstance of the crime and history of the defendant." R. 98 (12/8/2025 Order at 1) (Page ID #417). This language shows that the district court did not make exceptionally good behavior a prerequisite to relief. Instead, the district court noted that Flowers's good behavior was not outside of the norm and did not outweigh the other § 3553(a) factors. According to *Hale*, that is permissible, so the district court did not err. 127 F.4th at 641.

Next, Flowers contends that the district court abused its discretion by failing to consider his arguments, account for the purposes of supervised release, and provide a reasoned basis for its decision. Appellant Br. at 13–19. We address each of these arguments in turn. First, the order

shows that the district court considered Flowers's arguments. Flowers contended that he deserved early termination because he had demonstrated prosocial behaviors, had been successful under supervision, had a stable residence and job, and his crime was committed over twenty years ago. R. 93 (6/30/2025 Mot. for Early Term. at 2–3) (Page ID #396–97). The district court explicitly referenced most of these arguments, noting that Flowers "ha[d] demonstrated prosocial behaviors such as maintaining employment, stable housing, and 12 months of clean drug screens." R. 98 (12/8/2025 Order at 1) (Page ID #417). The district court ultimately disagreed with Flowers that those arguments supported early termination, but that is different than not considering them. True, the district court did not explicitly reference that Flowers had violated the terms of his supervised release only once or that his offense of conviction occurred twenty years ago. But the district court mentioned Flowers's one supervised-release violation, implying that the district court was aware it was the only one. *Id.* at 2 (Page ID #418). As for the length of time that had elapsed since the offense of conviction, that "matter is conceptually simple," so the district court was not required to address that argument explicitly because the order makes clear that the court "considered the evidence and arguments." *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008) (quoting *Rita v. United States*, 551 U.S. 338, 359 (2007)).

Second, there is nothing in the district court's order that demonstrates it ignored the purposes of supervised release. Those purposes are "to improve the odds of a successful transition from the prison to liberty," *Johnson v. United States*, 529 U.S. 694, 708–09 (2000), promote rehabilitation, and protect the public, *United States v. Lay*, 583 F.3d 436, 450 (6th Cir. 2009). The district court's order does not suggest that it ignored these purposes—it simply concluded that they

were better served by continued supervision. Flowers's disagreement with that conclusion is not sufficient to show that the district court ignored the purposes of supervised release.

Third and finally, whether the district court abused its discretion by failing to have a reasoned basis to deny Flowers's motion for early termination is a close question.[4] We likely would have decided Flowers's motion differently than the district court given Flowers's positive record on supervised release and the fact that if he was sentenced under the law as it exists today, he would have completed serving both his term of imprisonment and term of supervised release years ago. Despite that, our review in this context is limited to whether the district court abused its discretion. *See Tavarez*, 141 F.4th at 756. We hold that, under the deferential standard of review we must apply, there was a reasoned basis for the district court's conclusion. Absent deferential review, we may well have reached a different conclusion due to Flowers's stable home life, employment, general success on supervised release, and the potential sentencing disparities created by the length of his sentence in comparison to the sentence that he, and other similarly situated defendants, would receive today.

It has now been nearly one year since Flowers moved for early termination of his supervised release, R. 93 (6/30/2025 Mot. for Early Term.) (Page ID #395), and nearly two years

---

[4]We note that the district court's opinion also contains an erroneous statement of fact in support of the court's decision to deny the motion. The court stated that Flowers "received a reduction in his sentence through Compassionate Release on the condition that he be subject to an eight year period of supervised release." R. 98 (12/8/2025 Order at 2) (Page ID #418). That assertion is belied by the record and clearly erroneous. *See Tavarez*, 141 F.4th at 757. The order granting Flowers compassionate release stated that his term of supervised release was to remain ten years and contained no such conditional reasoning. R. 77 (10/7/2020 Order at 2) (Page ID #358). The district court only corrected the order to provide that Flowers's had an eight-year term of supervised release upon Flowers's own motion. R. 86 (Mot. for Clarification at 1) (Page ID #378); R. 87 (10/17/20204 Order) (Page ID #380). Given that the initial order did not state that Flowers's term of supervised release was eight years or condition the grant of compassionate release on an eight-year term, that statement by the district court is clearly erroneous and cannot serve as a reasoned basis to deny the motion. The parties, however, do not raise this, so it does not factor into our analysis here.

since his one, "isolated," positive drug test for marijuana, R. 94 (Supervision Rep. at 3) (Page ID #401). That one violation stemmed from Flowers's seemingly genuine, albeit mistaken, belief that he could use marijuana because he had a medical marijuana card and Ohio had legalized recreational marijuana. Indeed, after Flowers's probation officer told him that he was not permitted to use marijuana, Flowers never submitted another positive drug test. Should Flowers again move for early termination of his supervised release, we expect that he may be entitled to it if he has continued to comply with the terms of his supervision during the pendency of his appeals.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's order.